1  J. Craig Crawford (Bar No. 238466)
   ccrawford@carr-mcclellan.com
2  CARR McCLELLAN P.C.
   216 Park Road
3  P.O. Box 513
   Burlingame, California  94011-0513
4  Telephone:   (650) 342-9600
   Facsimile:    (650) 342-7685
5
   Attorneys for Defendant
6  pH BEAUTY LABS, INC.
   d/b/a FREEMAN BEAUTY
7

8              UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11 | GERI MARSHALL, on behalf of herself and all others similarly situated, | Case No. |
   
12 |                          | **NOTICE OF REMOVAL** |
   | Plaintiff,               |
13 |                          | Pursuant to Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1446 and 1453 |
   | v.                       |
14 |                          |
   | PH BEAUTY LABS, INC. d/b/a | **REDACTED MATERIAL** |
15 | FREEMAN BEAUTY; AND       |
   | DOES 1-20, Inclusive, entities, |
16 | business form unknown,    |
   
17 | Defendant.               |

18

19

20

21

22

23

24

25

26

27

28

29691-00001\iManage\5309503.1                    NOTICE OF REMOVAL

1  TO:  The Judges and the Clerk of the United States District Court for the

2  Central District of California - Western Division, Los Angeles:

3  PLEASE TAKE NOTE, that, pursuant to pursuant to 28 U.S.C. §§ 1332(d),

4  1446 and 1453, defendant pH Beauty Labs, Inc., d/b/a Freeman Beauty

5  ("Freeman") hereby removes the above-entitled action, from the Los Angeles

6  County Superior Court , Case No. BC571836 on the following grounds:

7  **I.  BACKGROUND**

8  **A.  Procedural Background**

9  1.  On or about February 9, 2015 plaintiff Geri Marshall ("Plaintiff") filed

10  suit against Freeman in Los Angeles Superior Court, Western Division as an

11  individual and on behalf of all others similarly situated, *Geri Marshall v. PH*

12  *Beauty Labs, Inc., d/b/a Freeman Beauty, Case No. BC 571836.*  A copy of the

13  Summons and Complaint are attached hereto as **Exhibit A.**

14  2.  Freeman was served with the Summons and Complaint on February

15  18, 2015.  Pursuant to 28 U.S.C. §1446(b), this Notice of Removal is timely as it

16  was filed within 30 days of service of the Summons and Complaint.

17  **B.  The Complaint**

18  3.  The complaint alleges four causes of action: (1) Violation of the

19  California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200 *et*

20  *seq.*, (2) Violations of the California False Advertising Law ("FAL"), California

21  Business & Professions Code §§17500 *et seq.*, (3) Violations of the California

22  Consumers Legal Remedies Act ("CLRA"), California Civil Code §§1750 *et seq.*,

23  and (4) Breach of Express Warranty, California Commercial  Code §2313.

24  4.  Each cause of action in the Complaint derives from Defendant's

25  advertising, labeling, and sale of products sold under the brand name "éclos™

26  plant-based beauty" ("éclos"). (Compl., ¶¶ 1-8, 79, 90, 97, 104.)

27  5.  The complaint was filed as a nationwide putative class action and

28  purports to seek relief on behalf of plaintiff Ms. Marshall individually, and on

1    behalf of:

2           "a class of persons in the United States who, from May 1,
3           2009 to the present, purchased éclos products primarily
            for  personal, family, or household use, and not for
4           resale."

5           (Compl., ¶ 71.)

6        6.    The Complaint seeks, among other things, the following forms of

7    relief:

8        a.    For the claim brought under the UCL:

9               (1)    Injunctive relief against Defendant to cease conducting

10                     business "through fraudulent or unlawful acts and

11                     practices." (Compl., ¶ 88.)

12              (2)    Injunctive relief against Defendant to commence a

13                     "corrective advertising campaign." (Compl., ¶ 88.)

14              (3)    An order for the restitution of all monies from the sale of

15                     éclos. (Compl., ¶ 89.)

16       b.    For the claim brought under the FAL:

17              (1)    "prospective injunctive relief," equitable relief, and

18                     "restitution in the amount they spent on éclos."  (Compl.,

19                     ¶ ¶95, 96.)

20       c.    For the claim brought under the CLRA:

21              (1)    "[A]ctual damages, punitive damages, restitution, and

22                     injunctive relief" and "prospective injunctive relief."

23                     (Compl., ¶ ¶100, 101.)

24       d.    For the claim of breach of express warranty:

25              (1)    "[A]ctual damages for Freeman's breach of warranty."

26                     (Compl., ¶ 110.)

27

28

1    7.    Specifically, among other things, the Complaint seeks, in the Prayer

2    for Relief:

3          a.    An Order declaring this action to be a proper class action,

4    appointing plaintiff and her counsel to represent the class, and requiring Freeman to

5    bear the costs of class notice. (Compl., Prayer for Relief.)

6          b.    An Order enjoining Freeman from selling éclos as benefitting

7    human skin cells. (*Id.*)

8          c.    An Order enjoining Freeman from selling éclos in any manner

9    suggesting or implying that éclos is clinically proven to be effective. (*Id.*)

10          d.    An Order requiring Freeman to engage in a corrective

11    advertising campaign and engage in any further necessary affirmative injunctive

12    relief, such as recalling existing product. (*Id.*)

13          e.    An Order awarding declaratory relief, and any further

14    retrospective or prospective injunctive relief permitted by law or equity, including

15    enjoining Freeman from continuing the unlawful practices alleged herein, and

16    injunctive relief to remedy Freeman's past conduct;. (*Id.*).

17          f.    An Order requiring Freeman to pay restitution to restore all

18    funds acquired by means of any act or practice declared by this Court to be an

19    unlawful, unfair or fraudulent business act or practice, untrue or misleading

20    advertising, or a violation of the UCL, FAL or CLRA, plus pre-and post-judgment

21    interest thereon. (*Id.*)

22          g.    An Order requiring Freeman to disgorge or return all monies,

23    revenues, and profits obtained by means of any wrongful or unlawful act or

24    practice. (*Id.*)

25          h.    An Order requiring Freeman to pay all actual and statutory

26    damages permitted under the cause of action alleged herein. (*Id.*)

27          i.    An Order requiring Freeman to pay punitive damages on any

28    cause of action so allowable. (*Id.*)

1              j.      An Order o attorneys' fees and costs to plaintiff and the class.

2    (*Id.*)

3              k.      An Order providing for all other such equitable relief as may be

4    just and proper. (*Id.*)

## II.   GROUNDS FOR REMOVAL

**A.   The Court has Subject Matter Jurisdiction over this Action Pursuant to the Class Action Fairness Act.**

8.   Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), federal district courts have original jurisdiction over any putative class action where (1) it involves 100 or more putative class members, (2) any putative class member is a citizen of a state different from any defendant, and (3) the aggregated claims of the members of the putative class more likely than not exceed $5 million. 28 U.S.C. §§ 1332(d)(2), (4), & (6); *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 976-77, 981 (9th Cir. 2013).   This action is removable pursuant to 28 U.S.C. §§ 1446 and 1453, as each of these requirements is met.

**a.   The putative class consists of more than 100 members.**

9.   CAFA defines "class action" as "any civil action filed under rule 23 of the Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).   Here, the Complaint is titled "Class Action" and is purported to be brought by Plaintiff on behalf of herself and "all others similarly situated, and the general public." (Compl., at 1:1-5)  Under the section of the Complaint titled "Class Action Allegations," the Complaint states that this is a putative of "persons in the United States who, from May 1, 2009 to the present purchased …." (*Id.*, ¶71)  The plaintiff further alleges that "[t]he members in the proposed class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court." (*Id.*, ¶ 72)

1    10.    Freeman's nationwide retail sales for the twelve éclos products at issue
2    exceed **REDACTED** just during the period of January 30, 2012 through February
3    28, 2015. (Declaration of Ted Paul in support of Notice of Removal ("Paul Decl.")
4    ¶ 7 at Exhibit B.) Plaintiff alleges a class period far greater than this: from May 1,
5    2009 to present.  When accounting for this two-and-a-half year period, the gross
6    sales are greater.  Further, based on the location of the regional distribution centers
7    to which these units were delivered before being shipped to retail stores for
8    purchase by end-consumers, these^REDACTED were purchased by consumers in at least
9    41 states – and the fewest number of products in any one state is 41.  (Paul Decl.,
10   Ex. B)  Even accounting for repeat purchases and assuming plaintiff was a typical
11   consumer of éclos products in purchasing an éclos product on five separate
12   occasions (Compl., ¶ 27), the putative nationwide class will exceed 100 members.

13        **b.    Minimal diversity exists between the parties**

14   11.    CAFA requires that only "minimal diversity" exist for diversity
15   jurisdiction to be present, that is, only one putative class member and one defendant
16   must be domiciled in different states. 28 U.S.C. §§ 1332(d)(2)(A); see also *Abrego*
17   *v. Dow Chem. Co.* 443 F.3d 676, 683 (9th Cir. 2006) (holding defendant removing
18   under CAFA must establish diversity jurisdiction by a "preponderance of the
19   evidence").

20   12.    Freeman is incorporated under the laws of Delaware and its principal
21   place of business is in Los Angeles, California. (Paul Decl.¶ 10.)  Freeman
22   therefore is a citizen of both Delaware and California.

23   13.    Although Plaintiff is a resident of Whittier, California (Compl., ¶ 9),
24   and therefore presumed to be a California citizen for diversity purposes, *see Bey v.*
25   *SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1096, 1102 (D. Or. 2012), the
26   putative class consists of likely hundreds of thousands of members that are citizens
27   of at least 39 states other than California or Delaware.  Freeman's internal sales
28   figures demonstrate that the twelve éclos products at issue in this action were

1    shipped by Freeman to regional distribution centers in <sup>REDACTED</sup> including

2    California and Delaware.  If a citizen of any of the 39 diverse states purchased one

3    of the twelve éclos products at issue, then that individual would be a member of the

4    putative class.  Given that nearly **REDACTED** were shipped to non-California and

5    non-Delaware distribution centers, it is a near certainty that a citizen of one of these

6    states is a member of the putative class.  Thus, the citizenship of "any member of a

7    class of plaintiffs is a citizen of a State different from any defendant," as required

8    under CAFA. 28 U.S.C. § 1332(d)(2)(A)

9         14.    Moreover, none of the exceptions to CAFA removal jurisdiction exist.

10   As demonstrated by Freeman's internal sales documents, over <sup>REDACTED</sup> of all units of

11   the twelve éclos products sold originated from regional distribution centers outside

12   of California and Delaware    **REDACTED**      Likewise, when

13   considering the percentage of gross sales, nearly <sup>REDACTED</sup> of all revenue received by

14   Freeman from the sale of the twelve éclos products at issue is traceable to sales

15   originating from regional distribution centers outside of California and Delaware

16      **REDACTED**      Given the great majority of purchases

17   occurred outside of California (or Delaware), the "local controversy," "home state,"

18   and "permissive" exceptions do not apply.

19       **c.**     **The Amount in Controversy Exceeds $5 Million**

20         15.    Under CAFA, "the claims of individual class members shall be

21   aggregated to determine whether the matter in controversy exceeds the sum or

22   value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

23   Freeman need only establish by a preponderance of the evidence that Plaintiff's

24   claims exceed the jurisdictional minimum. *Rodriguez*, 728 F.3d at 976-77, 981.

25   The right to remove a state court action to federal court under CAFA is determined

26   according to the plaintiff's pleading at the time of the petition. *Provincial Gov't of*

27   *Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1085 n. 1 (9th Cir. 2009).

28         16.    "[T]he test for determining the amount in controversy is the pecuniary

1  result to either party which the judgment would directly produce." *In re Ford*

2  *Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). Thus, "[t]he

3  requirement under CAFA that the amount in controversy exceed $5,000,000 in the

4  aggregate may be established either from the viewpoint of the plaintiff or the

5  viewpoint of the defendant, and regardless of the type of relief sought (e.g.,

6  damages, injunctive relief, or declaratory relief)." *Rippee v. Bos. Mkt. Corp.*, 408

7  F. Supp. 2d 982, 984 (S.D. Cal. 2005). This includes the cost of statutory damages

8  and pre- and post-judgment interest, *see Fredrickson v. Starbucks Corp.*, 980 F.

9  Supp. 2d 1227, 1232 (D. Or. 2013) (including cost of statutory penalties and pre-

10  and post-judgment interest in calculation of amount in controversy and concluding

11  that amount in controversy is greater than $ 5 million), as well as the value of any

12  injunctive relief sought, *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d

13  at 958, *see also Arens v. Popcorn, Indiana, LLC*, No. 14-CV-1323-SC, 2014 WL

14  2737412 at *2–3 (N.D. Cal. June 16, 2014) (denying motion to remand where sales

15  totaled $2.8 million, and injunctive relief involving removing products from market

16  and relabeling them would cost an additional $3.8 million).  Though attorney fees

17  are usually excluded in determining the amount in controversy, attorney fees may

18  be included where an underlying statute mandates or allows an attorney fees award.

19  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

20      17.  Relevant here, Plaintiff seeks restitution to restore "all funds" received

21  and "all revenues" obtained by Freeman. (Compl., Prayer for Relief at 20:10-14).

22  Elsewhere, Plaintiff clarifies that the measure of restitution, and alternatively

23  disgorgement, is the full purchase price of the éclos product purchased by the

24  members of the putative class.  Freeman's revenues for nationwide sales of the

25  twelve éclos products at issue exceed **REDACTED** (Paul Decl., Ex. A).  Thus,

26  from the perspective of Freeman, the restitutionary value of the class relief exceeds

27  the jurisdictional amount.  When adding in the alleged pre- and post-judgment

28  interest, cost of injunctive and declaratory relief, actual and statutory damages,

punitive damages, and attorney fees and costs, the amount in controversy greatly exceeds $5 million, as required for federal jurisdiction.  (*See* Paul Decl. ¶ 8.)

### III

### VENUE AND INTRA-DISTRICT ASSIGNMENT

18.    Because the Complaint was filed and is currently pending in the Los Angeles Superior Court, Western Division, this District is the proper venue for this action upon removal pursuant to 28 U.S.C. § 1441(a).

### IV

### DEFENDANT HAS SATISFIED ALL OTHER REQUIREMENTS OF THE REMOVAL

19.    As required by 28 U.S.C. § 1446, Freeman hereby provides this Court with copies of all process, pleadings, and orders served on Freeman in this action (attached as Exhibit A).  Freeman has not received any pleadings, process or orders besides those attached.

20.    As required by 28 U.S.C. § 1446(d), Freeman will promptly give written notice of the filing to Plaintiff, and file a copy of the Notice with the Clerk of the Los Angeles Superior Court, Western Division.

21.    In the event this Court has a question regarding the propriety of this Notice of Removal, Freeman requests that the Court issue an Order to Show Cause, so that Freeman may have an opportunity to address the Court's question.

Accordingly, Freeman removes the above-entitled action to this Court.

Dated:    March 19, 2015            CARR McCLELLAN P.C.


By: _____
    J. Craig Crawford
    Attorneys for Defendant
    FREEMAN BEAUTY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

─ LAW OFFICES OF RONALD A. MARRON, APLC
RONALD A. MARRON (SBN 175650)
651 Arroyo Drive San Diego, California 92103

TELEPHONE NO.: 619-696-9006    FAX NO.: 619-544-6665
ATTORNEY FOR (Name): Plaintiff and the Proposed Class

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 600
MAILING ADDRESS: South Commonwealth Avenue
CITY AND ZIP CODE: Los Angeles, CA 90005
BRANCH NAME: Western Division

**FILED**
Superior Court Of California
County of Los Angeles

FEB 09 2015

Sherri R. ~~~~ ~~~~~~~ Officer/Clerk
By _____ Deputy
Joel Lara

CASE NAME:
Geri Marshall v. PH Beauty Labs, Inc., d/b/a Freeman Beauty

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 5 7 1 8 3 6 |
| | | | JUDGE: |
| | | | DEPT: |

FILED BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | Real Property | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | Enforcement of Judgment |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☑ Fraud (16) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | Miscellaneous Civil Petition |
| ☐ Professional negligence (25) | Judicial Review | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| Employment | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☒ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☒ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action (specify):  four
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 02/06/2015

Ronald A. Marron                              ▶ Ronald A. Marron (FR)
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit A - Page 1 of 50

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
      or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
    case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]                **CIVIL CASE COVER SHEET**                Page 2 of 2

Exhibit A - Page 2 of 50

| SHORT TITLE: Marshall v. PH Beauty Labs, Inc. d/b/a Freeman Beauty | CASE NUMBER  BC 5 7 1 8 3 6 |
|---|---|

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

**FILED BY FAX**

**(CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)**

| This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☑ YES  LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 5   ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked.  For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | Local Rule 2.0<br>Page 1 of 4 |
|---|---|---|

| SHORT TITLE: Marshall v. PH Beauty Labs, Inc. d/b/a Freeman Beauty | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)  
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Local Rule 2.0  
Page 2 of 4

| SHORT TITLE: Marshall v. PH Beauty Labs, Inc. d/b/a Freeman Beauty | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Marshall v. PH Beauty Labs, Inc. d/b/a Freeman Beauty | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>*Stanley Mosk Courthouse*<br>*III North Hill St.* |
|---|---|
| CITY:<br>*Los Angeles* | STATE:<br>*CA* | ZIP CODE:<br>*90012* |

Item IV. Declaration of Assignment: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk _____ courthouse in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 02/09/2015 _____

*Ronald A. Moore* ☒R
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM**<br>**AND STATEMENT OF LOCATION** | Local Rule 2.0<br>Page 4 of 4 |
|---|---|---|

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PH Beauty Labs, Inc. d/b/a/ Freeman Beauty; and Does 1-20 *Including entities, business form unknown.*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Geri Marshall, on behalf of herself and all others similarly situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court Of California
County of Los Angeles

FEB 09 2015

Sherri R. _____ Executive Officer/Clerk
By_____, Deputy
Judi Lara

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* <br><br> Stanley Mosk Courthouse; 111 North Hill Street <br> Los Angeles, CA 90012 | **CASE NUMBER:** *(Número del Caso):* <br><br> **BC 5 7 1 8 3 6** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Ronald A. Marron; 651 Arroyo Drive San Diego CA 92103; (619) 696-9006

| DATE: FEB 09 2015 | SHERRI R. CARTER | Clerk, by | _Judi Lara_ | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | |

Exhibit A - Page 7 of 50

1

LAW OFFICES OF RONALD A. MARRON, APLC

2    RONALD A. MARRON (SBN 175650)
     *ron@consumersadvocates.com*

3    SKYE RESENDES (SBN 278511)     A6013
     *skye@consumersadvocates.com*   90012

4

5    651 Arroyo Drive                DEPT. 308
     San Diego, California 92103

6    Telephone:(619) 696-9006        JANE L
     Facsimile:   (619) 564-6665        JOHNSON

7

8    THE LAW OFFICE OF JACK FITZGERALD, PC

9    JACK FITZGERALD (SBN 257370)
     *jack@jackfitzgeraldlaw.com*

10   TREVOR M. FLYNN (SBN 253362)
     *trevor@jackfitzgeraldlaw.com*

11   TRAN NGUYEN (SBN 301593)
     *tran@jackfitzgeraldlaw.com*

12   Hillcrest Professional Building

13   3636 Fourth Avenue, Suite 202
     San Diego, California 92103

14   Phone: (619) 692-3840

15   Fax: (619) 362-9555

16   *Attorneys for Plaintiff and the Proposed Class*

17        SUPERIOR COURT FOR THE STATE OF CALIFORNIA
           COUNTY OF LOS ANGELES, WESTERN DIVISION

18

| | |
|---|---|
| 19 GERI MARSHALL, on behalf of herself and all others similarly situated, | Case No.:   **BC 5 71 8 3 6** |
| 20 | CLASS ACTION |
| 21    Plaintiff, | **COMPLAINT FOR:** |
| 22 | **VIOLATIONS OF THE CALIFORNIA** |
| 23    v. | **UNFAIR COMPETITION LAW;** |
| | **VIOLATIONS OF THE CALIFORNIA** |
| 24 PH BEAUTY LABS, INC. d/b/a | **FALSE ADVERTISING LAW;** |
| 25 FREEMAN BEAUTY; and DOES 1-20, | **VIOLATIONS OF THE CALIFORNIA** |
| Inclusive, entities, business form unknown | **CONSUMERS LEGAL REMEDIES ACT;** |
| 26 | **AND** |
| 27    Defendants. | **BREACH OF EXPRESS WARRANTY;** |
| 28 | DEMAND FOR JURY TRIAL |

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

FILED
Superior Court Of California
County Of Los Angeles

FEB 09 2015

Sherri R.
By
          Deputy

FILED BY FAX

Exhibit A - Page 8 of 50

1    Plaintiff GERI MARSHALL, on behalf of herself, all others similarly situated, and the
2    general public, by and through her undersigned counsel, hereby brings this action against
3    Defendant PH BEAUTY LABS, INC. d/b/a FREEMAN BEAUTY ("Freeman"), and alleges
4    the following upon her own knowledge, or where she lacks personal knowledge, upon
5    information and belief including the investigation of her counsel.

6                                  **INTRODUCTION**

7        1.    Freeman sells a line of "anti-aging" skin care products under the brand name
8    "Eclos," which claim to provide anti-aging results through "the benefit of science," namely
9    by incorporating an apple stem cell extract derived from a "rare" Swiss apple. According to
10   the Eclos products' current label, "APPLE STEMS [sic] CELLS ARE CLINICALLY
11   PROVEN to **REDUCE** the appearance of **WRINKLES + IMPROVE SKIN TEXTURE in**
12   **2 WEEKS.**"

13       2.    The Eclos products' labels, and Freeman's advertising elsewhere, contain
14   consistent representations about the products' use of so-called "Apple Stem Cell
15   Technology," and their efficacy in "rejuvenating" and "improving" skin, and providing "anti-
16   aging" results, including reducing wrinkles.

17       3.    These claims are false—or at a minimum misleading—because apple stem cells
18   cannot survive in active form long-term in a cream, and therefore cannot provide the
19   therapeutic anti-aging benefits Freeman claims. Moreover, the *in vitro* study on which
20   Freeman's claims are based does not reliably establish the claims, with its author even
21   admitting that its results could not be confirmed in a clinical trial, directly contradicting
22   Freeman's claim that the efficacy of apple stem cells is "clinically proven."

23       4.    In addition to engaging in false or misleading advertising, Freeman has breached
24   its express warranties that Eclos will improve skin and provide anti-aging results.

25       5.    Further, the Eclos products are unlawfully marketed "new drugs" within the
26   meaning of the Federal Food, Drug, and Cosmetic Act ("FDCA"), and its California
27   equivalent, the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), because although

28

1

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

1   Freeman markets Eclos for therapeutic purposes, the products are not generally recognized
2   among qualified experts as safe and effective for the marketed uses, and have not received
3   the FDA's required prior approval in the form of an approved New Drug Application.

4       6.    In addition, because Eclos' packaging contains false and misleading claims, the
5   products are misbranded under the FDCA and Sherman Law, in violation of the Unfair
6   Competition Law's "unlawful" prong.

7       7.    Finally, Freeman has failed to label Eclos in conformance with applicable
8   regulations, separately and independently rendering the product misbranded under the FDCA
9   and Sherman Law. Specifically, because Freeman markets Eclos for both cosmetic and
10   therapeutic purposes, it is subject to regulations promulgated pursuant to the FDCA relating
11   to both cosmetics and drugs, including the requirement that Freeman disclose Eclos' active
12   ingredients, and their proportion in the product; but Freeman fails to make this required
13   disclosure.

14       8.    Plaintiff Geri Marshall purchased Eclos in reliance on Freeman's false and
15   misleading claims. She has suffered injury as a result of Freeman's false advertising, warranty
16   breaches, misbranding, and unlawful marketing of Eclos, and brings this class action to
17   remedy Freeman's unlawful acts.

18                        **THE PARTIES**

19       9.    Plaintiff Geri Marshall is a resident of Whittier, California.

20       10.    Defendant pH Beauty Labs, Inc. is a Delaware corporation with its principal
21   place of business located at 1964 Westwood Boulevard, Suite 300, Los Angeles, California.
22   pH Beauty Labs does business as "Freeman Beauty," and is referred to throughout this
23   Complaint as "Freeman."

24       11.    Plaintiff is unaware of the true names or capacities of the persons or entities sued
25   herein as DOEs 1 through 20, and therefore sues such Defendants by such fictitious names.
26   Plaintiff is informed and believes that each of the DOE Defendants is in some manner legally
27   responsible for the damages suffered by Plaintiff and the members of the class as alleged
28

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

Exhibit A - Page 10 of 50

1   herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these
2   Defendants when they have been ascertained, along with appropriate charging allegations, as
3   may be necessary.

4   ## JURISDICTION AND VENUE

5       12.    This Court has subject matter jurisdiction over all causes of action asserted
6   herein under the California constitution.

7       13.    Freeman advertised, marketed, distributed, offered for sale, and sold its Eclos
8   products to consumers in California and the United States, transacting business in Los
9   Angeles and throughout California and the United States, including without limitation
10  through extensive on-the-shelf presence in Los Angeles, and online marketing intended to
11  reach consumers in Los Angeles.

12      14.    This Court has personal jurisdiction over Freeman pursuant to Cal. Code Civ. P.
13  § 410.10, as a result of Freeman's substantial, continuous and systematic contacts with the
14  State, and because Freeman has purposely availed itself of the benefits and privileges of
15  conducting business activities within the State.

16      15.    Venue is proper in Los Angeles County pursuant to Cal. Civ. Code § 1780(d)
17  because Freeman is doing substantial business in the County.

18  ## FACTS

19      16.    On or about February 10, 2012, Freeman acquired Eclos from Texas-based
20  Delicious Brands, the product line's original developer, who first sold Eclos beginning in
21  May 2009. "Eclos" is the French word for "bloom."

22      17.    Freeman sells Eclos products direct to consumers online via its Website
23  (http://www.freemanbeauty.com/products/eclos), through third-party online "e-tailers," and
24  through traditional "brick-and-mortar" food, drug, and mass retail stores, such as Target, Ulta,
25  Duane Reade, Walgreens, CVS, Rite Aid, and Fred Meyer (among others).

26
27
28

<div align="center">

3

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT
</div>

18.   Beginning in or about May 2009, products that Freeman (including its predecessor, Delicious Brands[1]) has sold in the Eclos skin care line include:

    a.   Cellular Activator Facial Serum (approximate $24.99 retail price)

    b.   Moisture Therapy Regenerative Cream (approximate $24.99 retail price)

    c.   Instant Radiance Facial Scrub (approximate $12.99 retail price)

    d.   Skin Renewal Clay Mask (approximate $12.99 retail price)

    e.   Skin Renewal Clay Mask Travel Size (approximate $1.99 retail price)

    f.   Daily Facial Cleansing Oil (approximate $10.99 retail price)

    g.   Daily HydraPrimer SPF 30 (approximate $15.99 retail price)

    h.   Daily HydraPrimer SPF 30 Travel Size (retail price unknown)

    i.   Anti-Aging Starter Kit (approximate $19.99 retail price)

    j.   Rejuvenating Antioxidant Mask (approximate $12.99 retail price)

    k.   Restorative Eye Cream (approximate $24.99 retail price)

    l.   Skin Prep Cleanser (approximate $14.99 retail price)

19.   Exemplars of the Eclos' products' packaging are attached to this Complaint as Exhibit 1, which packaging is expressly incorporated into this Complaint.

20.   Since May 2009, and continuing to the present, Freeman has used a number of phrases in advertising Eclos, including on the products' labels and packaging, in print advertisements, and online, which convey the central theme that the products provide proven anti-aging results because they contain apple stem cells.

21.   Generally, these statements can be divided into three categories: technology or science statements; benefit statements; and clinical proof statements.

22.   Examples of statements Freeman makes suggesting that Eclos is technologically- or scientifically-advanced because of its apple stem cell extract include:

    a.   "the beauty of nature. the benefit of science."

---

[1] All references to Freeman in this Complaint, where appropriate, also refer to its predecessor, Delicious Brands.

b.    "Contains High Potency Plant Stem Cells / A Swiss Phyto Extract / for
Cellular Rejuvenation"

c.    "high tech, anti-aging skin care with Apple Stem Cell Technology"

d.    "Plant Stem Cell technology helps reverse signs of aging."

23.    Examples of representations and promises Freeman makes that Eclos, as a result of its technologically- or scientifically-advanced apple stem cell extract, will provide certain benefits include:

a.    "Anti-Aging Skin Care – Restore. Renew. Replenish."

b.    "helps wake up skin's self renewal process to revitalize fatigues, stressed skin"

c.    "Unique plant extracts help boost firmness and tone to smooth out fine lines and damage."

d.    "By revitalizing your skin stem cells, it helps tighten sagging skin and postpones wrinkling"

e.    "Awakens dormant skin cells, making them behave like young skin cells."

f.    "Reduces lines and wrinkles."

g.    "Regenerates Skin Cells"

h.    "Rehabilitates Aging Skin"

i.    "Resists Further Damage"

j.    "Extends Skin Cell Longevity"

k.    "Brightens Dull Skin"

l.    "Gently Purifies Pores"

m.    "Helps reduce the appearance of fine lines and wrinkles."

n.    "Skin's collagen matrix and elastin fibroblasts can look up to 15 years younger (a 50 year old subject's skin can appear like that of a 35 year old.")

o.    "Skin can look up to 15 years younger."

24.     Freeman has consistently represented that the benefits are proven, both by claiming that the efficacy of apple stem cells to benefit skin are clinically-proven, and by suggesting or implying—falsely—through the use of ambiguous phraseology that *Eclos itself* is clinically-proven. Such representations include:

    a.   "Exclusively formulated with rejuvenating Apple Stem Cells, clinically proven to significantly reduce wrinkles and improve skin texture in two weeks."

    b.   "Clinically proven results."

    c.   "Clinical results—100% of subjects experienced visible decrease in wrinkle depth."

    d.   "100% of women saw a reduction in wrinkle appearance within 2 weeks."

    e.   "CLINICALLY PROVEN to visibly REPAIR & RENEW skin in 2 weeks"

25.     Freeman later clarified in some of its advertising that the "clinical" proof it referred to meant "100% of 20 participants in a clinical study on Apple Stem Cells experienced a decrease in wrinkle depth after 28 days."

26.     Consistent with these representations, a "brand story" video on Freeman's Eclos Website, which Freeman has used to advertise Eclos since at least July 2010, makes the following statements:

> Say hello to Eclos. New hope for aging skin. With plant stem cells from a rare Swiss apple that wake up skin stem cells, skin looks radiant, up to 15 years younger. Eclos, with phytoplex 24, a unique complex of plant extracts, vitamins, and anti-oxidants working in synergy to dramatically improve skin. Eclos—clinically proven; 100% of women saw visible signs of wrinkle reduction and a smooth, healthy glow that, until now, came only with youth, all without parabins, sulfates, or synthetic anything. Impressive results. Impressive value. Eclos: new hope for aging skin.

27.     Plaintiff first purchased Eclos in approximately the Spring of 2011, and then several times thereafter, perhaps approximately 5 times total. Each time, plaintiff purchased

6

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

Exhibit A - Page 14 of 50

1   the Eclos Cellular Activator Facial Serum. She purchased Eclos from one or more stores in

2   the Modesto, California area, most probably from either the CVS located at 801 Oakdale

3   Road or the CVS located at 2601 Oakdale Road, but possibly also from a Wal-Mart,

4   Walgreens, or Target store located on McHenry Road in Modesto, or a Rite Aid located on

5   Oakdale Road in Modesto.

6        28.    In purchasing the Eclos Cellular Activator Facial Serum, plaintiff relied on

7   Freeman's statements which conveyed to her the central message that, because of its apple

8   stem cell extract, it was proven to provide "anti-aging" benefits to her skin.

9        29.    Specifically, plaintiff relied on Eclos packaging statements including: "Eclos /

10  plant-based beauty"; "Contains High Potency / Plant Stem Cells / A Swiss Phyto Extract / for

11  Cellular Rejuvenation"; "Clinical Results – 100% of Subjects Experienced Visible Decrease

12  in Wrinkle Depth"; "Anti-Aging Cellular Activator Face Serum"; "Regenerates Skin Cells";

13  "Rehabilitates Aging Skin"; "Resists Further Damage."

14       30.    Despite using Eclos for a substantial period of time, plaintiff did not see any of

15  the promised results.

16                    **FREEMAN'S UNLAWFUL ACTS & PRACTICES**

17  I.    FREEMAN MAKES FALSE AND MISLEADING EFFICACY CLAIMS

18        RELATING TO ECLOS' APPLE STEM CELL EXTRACT

19        A.    The Use of Apple Stem Cells in Cosmeceuticals

20       31.    In 2008, an organization called Mibelle Biochemistry published an article in

21  SOFW Journal titled, "Plant Stem Cell Extract for Longevity of Skin and Hair." A true and

22  correct copy of Plant Stem Cell Extract is attached hereto as Exhibit 2, and expressly

23  incorporated into this Complaint.

24       32.    The SOFW article claimed that Mibelle had harnessed the power of a species of

25  apple, Uttwiler Spätlauber, which was known for its longevity, to create a serum that could

26  revitalize skin. Specifically, Mibelle claimed that the apple's stem cells stimulated human

27  stem cell proliferation.

28

                                         7
                          *Marshall v. pH Beauty Labs, Inc.*
                            CLASS ACTION COMPLAINT

33. According to the SOFW article, Mibelle performed three specific tests.

34. First, Mibelle scientists obtained embryonic human stem cells from umbilical cord blood. They extracted apple stem cells and created a preparation called PhytoCellTech™ Malus Domestica, in which the apple stem cell extract is mixed with xanthan gum, glycerin, lecithin, phenoxyethanol, and aqua. Then they introduced the solution, containing a concentration of 0.1% of apple stem cells, to the human embryonic stem cells, and reported the extract stimulated cell proliferation by 80%.

35. Second, Mibelle scientists stressed the human embryonic stem cells with UV light, noting that 50% of such cells cultured in a growth medium alone died, whereas cells cultured in the presence of the PhytoCellTech™ extract experienced "only a small loss of viability."

36. Third, Mibelle scientists exposed fibroblast cells, common in connective tissue, to hydrogen peroxide for two hours, until they showed signs of aging, meaning that several genes essential for cell proliferation and growth were significantly down-regulated. Mibelle scientists then incubated the cells in a 2% PhytoCellTech™ extraction, for 144 hours, concluding the extract neutralized this down-regulation or even induced an up regulation, as well as stimulated an antioxidant enzyme.

37. Finally, Mibelle scientists conducted a study of 20 participants, who used a 2% PhytoCellTech™ cream twice daily to the "crow's fee" area around the eye, concluding that "wrinkle depth" was reduced 8% after 2 weeks, and 15% after four weeks.

38. Following Mibelle's publication of its results in May 2008, cosmetic and skincare companies worldwide began featuring the apple stem cell extract in skin care products.

**B. Freeman's Claimed Benefits for Eclos Based on Its Apple Stem Cell Extract are False or Misleading**

39. In making its apple stem cell extract claims, Freeman relies exclusively or primarily on the results reported by Mibelle in the May 2008 SOFW Journal article.

1      40.    SOFW Journal, the publication in which Mibelle issued its findings, is not a

2    peer-reviewed journal. Rather, its purpose is to promote the formulation and sale of cosmetic

3    treatments, and the research studies it publishes are typically performed by companies that

4    promote and sell the very cosmetic products being "tested."

5      41.    Mibelle filed a patent application for PhytoCellTech™ and remains today a

6    principal supplier of apple stem cell extract to the skincare and cosmetic industry.

7      42.    The Mibelle article primarily concerns three in vitro tests performed by

8    introducing Mibelle's apple stem cell extract to human embryotic stem cells, or to fibroblast

9    cells for several days. These conditions do not support efficacy claims concerning adult stem

10   cells in the skin's basal layer after topical application in a lotion.

11      43.    Mibelle's "clinical study" does not support Freeman's "anti-aging" or efficacy

12   claims.

13      44.    The study described in the Plant Stem Cell Extract article involved 20 women

14   using a 2% concentration PhytoCellTech™ cream twice-daily in the "crow's feet area" over

15   four weeks. Mibelle claimed the cream "was found to significantly reduce wrinkle depth after

16   two and after four weeks, by 8% and 15% respectively." Mibelle includes two images alleged

17   to depict these results, the first "an example" of "[t]he effect . . . nicely demonstrated by

18   generation of 3D pictures" from the PRIMOS system, and the second "digital photos"

19   supposedly showing "[t]he anti-wrinkle efficacy" of the cream.

20      45.    Mibelle's article fails to provide adequate information or data underlying its

21   "clinical study." Mibelle does not describe the selection criteria for participants; what

22   procedures were followed, including whether there was a control group (though there clearly

23   was not), and whether participants were permitted to use any other cosmetics, soaps, etc.;

24   does not identify the number of participants who supposedly saw results, or describe the

25   consistency of the results among the group; and does not describe how the results were

26   measured so as to arrive at the 8% and 15% numbers (for example, whether this was peak

27   change in depth or average change over what size an area of skin).

28

46.  Even with proper procedures under proper conditions, a group of 20 participants is statistically insignificant, and in any event, Mibelle does not discuss the statistical significance of its results.

47.  In addition, the "3D scan" Mibelle produced for the article is merely a self-proclaimed "example" from among the 20-subject group, and likely the most compelling or successful example, and not a fair representation of an average change.

48.  Significantly, Dr. Daniel Schmid, the research director of Mibelle Biochemistry and primary author of the Plant Stem Cell Extract article, has in fact admitted that "[t]he anti-ageing benefit for the skin after topical application could not be confirmed in a clinical trial."[2]

49.  Freeman's claims are also false or misleading because the apple stem cell extract in Eclos must be alive to provide any benefit, but such stem cells are delicate, require precise temperature and other conditions for survival, and generally cannot survive long-term embedded in a cream. At a minimum, the apple stem cell extract in Eclos is likely to degrade over time, both before and after the consumer's purchase, resulting in a significantly diminished benefit, if any.

50.  Moreover, the 20 subjects in the Mibelle study used a 2% concentration, but Freeman does not disclose the amount or proportion of apple stem cell extract in any Eclos product, which may be significantly less than 2%.

51.  But even if its findings were accepted as true, Mibelle's "clinical" study of 20 women to determine the "anti-wrinkle efficacy" of its apple stem cell extract does not support Freeman's broader "anti-aging" claims.

---

[2] Quoted in Leah Hard, *Could the extract from a rare Swiss apple REALLY get rid of your wrinkles?*, Mail Online, Nov. 30, 2009, at http://www.dailymail.co.uk/femail/article-1231889/Could-extract-rare-Swiss-apple-REALLY-rid-wrinkles.html (last visited January 29, 2015).

10

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

1    II.    ECLOS IS AN ULAWFULLY-MARKETED NEW DRUG

2        A.    The Federal Food, Drug, and Cosmetic Act

3        52.    The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*

4    governs the sale of foods, drugs, and cosmetics in the United States. The California

5    counterpart to the FDCA, known as the Sherman Law, incorporates FDCA's regulations. Cal.

6    Health & Safety Code §§ 109925, 110110, 111550.

7        53.    The FDCA defines cosmetics by their intended use, as "articles intended to be

8    rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human

9    body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21

10    U.S.C. § 321(i)(1).

11        54.    The FDCA defines drugs, in part, by their intended use, as "articles intended for

12    use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other

13    than food) intended to affect the structure or function of the body of man or other animals,"

14    21 U.S.C. § 321(g)(1).

15        55.    The FDA has explained that "[s]ome products meet the definitions of both

16    cosmetics and drugs," for example, "when a product has two intended uses" as with an anti-

17    dandruff shampoo," which "is a cosmetic because its intended use is to cleanse the hair," and

18    also "is a drug because its intended use is to treat dandruff. . . . Such products must comply

19    with    the    requirements    for    both    cosmetics    and    drugs."

20    http://www.fda.gov/cosmetics/guidancecomplianceregulatoryinformation/ucm074201.htm.

21        56.    The FDA has further explained that "[f]irms sometimes violate the law by

22    marketing a cosmetic with a drug claim or by marketing a drug as if it were a cosmetic,

23    without adhering to requirements for drugs." *Id.*

24        B.    Eclos is Both a Cosmetic and a Drug

25        57.    Freeman markets Eclos as a cosmetic. Per the FDA, "[u]nder the law, some of

26    the products commonly referred to as 'personal care products' are cosmetics," including "skin

27    moisturizers, perfumes, lipsticks, fingernail polishes, eye and facial makeup preparations,

28

<div align="center">

11

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

</div>

1  shampoos, permanent waves, hair colors, some toothpastes, and deodorants."[3] But Eclos is
2  also a drug because, as demonstrated by many of its claims and representations set forth
3  above, an intended use of Eclos is to affect the structure and function of the human body,
4  including "skin stem cells." Accordingly, the product is promoted for uses that cause it to be
5  a drug under 21 U.S.C. § 321(g)(1).

6      58.    Both a drug and a cosmetic is misbranded "[i]f its labeling is false or misleading
7  in any particular." 21 U.S.C. §§ 352(a) (drug), 362(a) (cosmetic); Cal. Health & Safety Code
8  §§ 111330 (drug), 111730 (cosmetic). In addition, "[i]n determining whether the labeling or
9  advertisement of a food, drug, device, or cosmetic is misleading, all representations made or
10  suggested by statement, word, design, device, sound, or any combination of these, shall be
11  taken into account." Cal. Health & Safety Code § 110290.

12      59.    Because Freeman's Eclos product claims are false and misleading as noted
13  above, these products are misbranded under the FDCA and Sherman Law.

14      60.    Furthermore, under the FDCA, drugs must either receive premarket approval by
15  the FDA through a New Drug Application process, or conform to a monograph for a particular
16  drug category, as established by the FDA's Over-the-Counter Drug Review. Freeman's Eclos
17  products have not received premarket FDA approval, and do not conform to a monograph for
18  a drug category. As such, they are unapproved new drugs that are being marketed unlawfully
19  in the United States under 21 U.S.C. § 355(a).

20      61.    In addition, as both cosmetics and drugs, these products are also misbranded by
21  failing to identify their active ingredients under 21 U.S.C. §§ 362(c) and 701.3(d)(cosmetics)
22  and 21 U.S.C. §§ 352(c) and 201.66(drugs).

23                         **PLAINTIFF'S RELIANCE & INJURIES**

24      62.    Plaintiff purchased Eclos relying on Freeman's claims that it is clinically proven
25  to provide a variety of "anti-aging" results. These representations were (and are) false and
26
27

    ..., *Are all personal care products regulated as cosmetics?* (Last Updated April 11,
2014), *at* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm242716.htm.

misleading, and had (and have) the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably.

63.    Plaintiff paid more for the products than she otherwise would have absent these statements, and would not have been willing to pay the prices she did, or to purchase Eclos at all, absent the misrepresentations.

64.    Because Eclos did not actually provide anti-aging results as promised, its true value was $0, and plaintiff and other purchasers were injured at least in the amounts of their purchases.

65.    By using false and misleading claims, Freeman was able to command a market price for Eclos significantly above a fair market price, and above what its price would have been absent Freeman's use of the false and misleading statements.

66.    Plaintiff also sustained legally cognizable injury in the form of lost money as a result of Freeman's misbranding, which also was in the nature of an omission, *i.e.*, Freeman's failure to disclose Eclos' active drug ingredients and their proportions.

67.    Had Freeman labeled Eclos in conformance with applicable FDCA and state law cosmetic and drug regulations, plaintiff may have been unwilling to purchase Eclos at the prices she paid, and may not have purchased Eclos at all.

68.    Plaintiff sustained legally cognizable injury in the form of lost money as a result of Freeman's marketing Eclos in a manner that causes them to be new drugs within the meaning of the FDCA. Since manufactures may not lawfully market or sell *any* new drug, Eclos would not have been available for sale to plaintiff if Freeman had acted lawfully.

## DELAYED DISCOVERY

69.    Plaintiff did not discover that Freeman's labeling and advertising of Eclos was deceptive until she spoke with her counsel in this matter in approximately May 2014.

70.    Plaintiff, in an exercise of reasonable diligence, would not have been able to discover Freeman's deceptive practices given that, like nearly all consumers and other

13

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

1 | members of the putative class, she is not an expert on skincare, and does not read or have
2 | access to publications of the sort in which the Mibelle study appears.

3 | ### CLASS ACTION ALLEGATIONS

4 | 71.    Plaintiff seeks to represent a class of persons in the United States who, from May
5 | 1, 2009 to the present, purchased Eclos products primarily for personal, family, or household
6 | use, and not for resale.

7 | 72.    The members in the proposed class are so numerous that individual joinder of
8 | all members is impracticable, and the disposition of the claims of all class members in a single
9 | action will provide substantial benefits to the parties and Court.

10 | 73.    Questions of law and fact common to plaintiffs and the class include, but are not
11 | limited to the following:

12 | a.    The amount or proportion of apple stem cell extract in Eclos;

13 | b.    The efficacy of apple stem cell extract in affecting and benefitting human
14 | adult stem cells in the skin's basal layer so as to provide the "anti-aging"
15 | results Freeman represents;

16 | c.    Whether the apple stem cells in Eclos are in a condition where it is
17 | impossible for them to have any therapeutic benefits;

18 | d.    Whether Freeman's representations and claims concerning Eclos are
19 | likely to mislead, deceive, confuse, or confound consumers acting
20 | reasonably;

21 | e.    Whether Eclos' packaging violates applicable federal and state
22 | regulations;

23 | f.    The proper equitable and injunctive relief;

24 | g.    The proper amount of actual or compensatory damages;

25 | h.    The proper amount of restitution or disgorgement;

26 | i.    The proper amount of punitive damages; and

27 | j.    The proper amount of reasonable litigation expenses and attorneys' fees.

28 |

14

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

74.    Plaintiff's claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Freeman's conduct.

75.    Plaintiff will fairly and adequate represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

76.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

77.    Questions of law and fact common to the class predominate over any questions affecting only individual class members.

78.    As a result of the foregoing, class treatment is appropriate.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW,

### CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*

79.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

80.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

### Fraudulent

81.    Freeman's benefit, efficacy, and proof claims based on its apple stem cell extract, set forth herein, are literally false and likely to deceive the public.

### Unlawful

82.    As alleged herein, Freeman has illegally marketed Eclos as a new drug in violation of 21 U.S.C. § 355(a) and Cal. Health & Safety Code § 110110, and therefore has behaved in an "unlawful" manner under the UCL.

83. As alleged herein, Freeman has misbranded Eclos. Misbranding is a "[p]rohibited act[]" under the FDCA, 21 U.S.C. § 331, and therefore has behaved in an "unlawful" manner under the UCL.

84. As alleged herein, Freeman has advertised Eclos with false or misleading claims, and violated express warranties, such that Freeman's actions as alleged herein violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*;
- The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*;
- The Lanham Act, 15 U.S.C. §§ 1501 *et seq.*; and
- The Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.*

## Unfair

85. Freeman's conduct with respect to the labeling, advertising, and sale of Eclos is unfair because Freeman's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

86. Freeman's conduct with respect to the labeling, advertising, and sale of Eclos is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, the Consumers Legal Remedies Act, the Lanham Act, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

87. Freeman's conduct with respect to the labeling, advertising, and sale of Eclos is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves can reasonably avoid.

*       *       *

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

88.     In accordance with Cal. Bus. & Prof. Code § 17203, plaintiff seeks an order enjoining Freeman from continuing to conduct business through fraudulent or unlawful acts and practices, and to commence a corrective advertising campaign. Freeman's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

89.     On behalf of herself and the class, plaintiff also seeks an order for the restitution of all monies from the sale of Eclos, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW,

## CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*

90.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

91.     The FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

92.     As set forth herein, Freeman's benefit, efficacy, and proof claims based on its apple stem cell extract are literally false and likely to deceive the public

93.     Freeman's claim that Eclos "helps delay the natural signs of aging by maintaining the longevity & activity of stem cells in the skin" is untrue or misleading.

94.     Freeman knew, or reasonably should have known, that the claims were untrue or misleading.

95.     Freeman's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

96.     Plaintiff and members of the class are entitled to injunctive and equitable relief, and restitution in the amount they spent on Eclos.

17

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,

### CAL. CIV. CODE §§ 1750 *ET SEQ.*

97.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

98.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

99.     Freeman's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.      § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.      § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.      § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.      § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

100.    As a result, plaintiffs and the class members have suffered irreparable harm and are entitled to actual damages, punitive damages, restitution, and injunctive relief.

101.    Freeman's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

102.    In compliance with Cal. Civ. Code § 1782, plaintiff sent notice of her claims more than 30 days before seeking damages under the CLRA.

103.    In compliance with Cal. Civ. Code § 1780(d), plaintiff's affidavit of venue is filed concurrently herewith.

18

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY, CAL. COM. CODE § 2313

104.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

105.   There was a sale of goods from Freeman to plaintiff and the class members.

106.   Freeman made an affirmation of fact or promise that Eclos is "clinically proven" to provide a variety of anti-aging results. Specifically, Freeman warranted that Eclos is "CLINICALLY PROVEN to visibly REPAIR & RENEW skin in 2 weeks." These affirmations of fact, promises, and descriptions formed part of the basis of the bargain. Freeman thus expressly warranted the goods sold.

107.   Freeman breached the warranty in that Eclos is not clinically proven, and does not provide the anti-aging results promised.

108.   Plaintiff and the class members suffered injury as a result of Freeman's breach in that they paid money products that were not what Freeman represented.

109.   Plaintiff gave Freeman notice of the breach prior to filing this action.

110.   Plaintiff, on behalf of herself and the class, seeks actual damages for Freeman's breach of warranty.

### PRAYER FOR RELIEF

111.   Wherefore, plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against Freeman as to each and every cause of action, including;

A.   An Order declaring this action to be a proper class action, appointing plaintiff and her counsel to represent the class, and requiring Freeman to bear the costs of class notice;

B.   An Order enjoining Freeman from selling Eclos as benefitting human skin cells;

19

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

C.    An Order enjoining Freeman from selling Eclos in any manner suggesting or implying that Eclos itself is clinically proven to be effective;

D.    An Order requiring Freeman to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing product;

E.    An Order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Freeman from continuing the unlawful practices alleged herein, and injunctive relief to remedy Freeman's past conduct;

F.    An Order requiring Freeman to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL or CLRA, plus pre-and post-judgment interest thereon;

G.    An Order requiring Freeman to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.    An Order requiring Freeman to pay all actual and statutory damages permitted under the causes of action alleged herein;

I.    An Order requiring Freeman to pay punitive damages on any cause of action so allowable;

J.    An Order awarding attorneys' fees and costs to plaintiff and the class; and

K.    An Order providing for all other such equitable relief as may be just and proper.

20

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

Exhibit A - Page 28 of 50



**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 6, 2015

*Ronald A. Marron*
By: Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
TRAN NGUYEN
*tran@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Attorneys for Plaintiff and the Proposed Class*

21

*Marshall v. pH Beauty Labs, Inc.*
CLASS ACTION COMPLAINT

Exhibit A - Page 29 of 50



1   THE LAW OFFICE OF JACK FITZGERALD, PC
2   JACK FITZGERALD (SBN 257370)
    *jack@jackfitzgeraldlaw.com*
3   TREVOR M. FLYNN (SBN 253362)
    *trevor@jackfitzgeraldlaw.com*
4   TRAN NGUYEN (SBN 301593)
5   *tran@jackfitzgeraldlaw.com*
    Hillcrest Professional Building
6   3636 Fourth Avenue, Suite 202
7   San Diego, California 92103
    Phone: (619) 692-3840
8   Fax: (619) 362-9555
9   LAW OFFICES OF RONALD A. MARRON, APLC
10  RONALD A. MARRON (SBN 175650)
    *ron@consumersadvocates.com*
11  SKYE RESENDES (SBN 278511)
12  *skye@consumersadvocates.com*
    ALEXIS WOOD (SBN 270200)
13  *alexis@consumersadvocates.com*
14  651 Arroyo Drive
15  San Diego, California 92103
    Telephone:(619) 696-9006
16  Facsimile: (619) 564-6665
17  *Attorneys for Plaintiff and the Proposed Classes*

18          SUPERIOR COURT FOR THE STATE OF CALIFORNIA
19                COUNTY OF LOS ANGELES, WESTERN DIVISION
20  GERI MARSHALL, on behalf of herself
    and all others similarly situated,
21
22        Plaintiff,                     CONSUMERS LEGAL REMEDIES
                                          ACT VENUE AFFIDAVIT
23              v.
24  PH BEAUTY LABS, INC. d/b/a           [CAL. CODE CIV. P. § 1780(d)]
25  FREEMAN BEAUTY,
26        Defendant.
27
28

                        *Marshall v. pH Beauty Labs, Inc.*
                           CLRA VENUE AFFIDAVIT



1   I, Geri Marshall, declare as follows:

2       1.    I am a plaintiff in this action. I make this affidavit as required by California Civil

3   Code § 1780(d).

4       2.    The Complaint in this action is filed in a proper place for the trial of this action

5   because defendant is doing business in this county.

6       I declare under penalty of perjury under the laws of the United States that the foregoing

7   is true and correct to the best of my knowledge.

8   Executed this 31st day of January, 2015, in Wittier, California.

9

10

11                              Geri Marshall

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    1

# EXHIBIT 1

EX 1

Eclos Legacy Products Packaging (Type A)







New Hope for Aging Skin
Researchers have found that Plant Stem Cells extracted from a rare Swiss apple, (Uttwiler Spätlauber), show tremendous ability to stimulate skin stem cells, encouraging aging skin to behave like younger skin.
In addition to the Plant Stem Cell technology, this targeted eye cream is enriched with PhytoPlex26, a proprietary complex of plant extracts and clinically proven ingredients–Eyeseryl and Haloxyl, to help reduce puffy eyes and diminish the appearance of dark circles.
Eyeseryl: Clinical studies showed 70% of volunteers saw a decrease in puffiness.
Haloxyl: 60% of volunteers saw a reduction in under-eye circles.
Manufactured Exclusively for Delicious Brands, LLC Dallas, Texas 75287 deliciousbrandsllc.com eclosbeauty.com Made in USA
éclos
plant-based beauty

02/09/2015

eclos™
plant-based beauty
Plant Stem Cells
CLINICAL RESULTS 100%
New Hope for Aging Skin
Researchers have found that Plant Stem Cells extracted from a rare Swiss apple, (Uttwiler Spätlauber), show tremendous ability to stimulate skin stem cells, encouraging aging skin to behave like younger skin.
In addition to the Plant Stem Cell technology, Eclos™ is enriched with PhytoPlex24™, a proprietary complex of plant extracts, vitamins and anti-oxidants known to work in synergy to minimize the appearance of fine lines, wrinkles and tired skin while delivering a smooth and radiant complexion.
Clinically Proven Results
100% of the women saw a reduction in wrinkle appearance within 2 weeks
Skin's collagen matrix and elastin fibroblasts can look up to 15 years younger
RESTORE, RENEW, REPLENISH
Anti-Aging Skin Care
Register for special offers and get the very latest news at eclosbeauty.com

Eclos Legacy Products Packaging (Type B)



Eclos Legacy Product Packaging (Type B):

Travel/Starter Kit



<u>Example of Eclos Legacy Products Ingredients Panel: Moisture Therapy</u>
<u>Regenerative Cream</u>

*Black box added to highlight "plant stem cell" claim.*

## Moisture Therapy
# Regenerative Cream

The latest in Plant Stem Cell technology is believed to be the holy grail of anti-aging skin care. This remarkable facial cream containing high potency Plant Stem Cells is formulated specifically to help protect your own skin stem cells. As a result, it promotes the self-renewal capacity of the skin and helps **slow the signs of aging**. By revitalizing your skin stem cells, it **helps tighten sagging skin** and postpones wrinkling. The added benefits of Chamomile and Cucumber found in the powerhouse complex PhytoPlex24™ provides the **ultimate in soothing** and defensive properties for the skin.

**Use:** May be used alone or for optimal results apply over Eclos™ Cellular Activator Face Serum day or night.

**Ingredients:** Purified Water (Aqua), Glycerin, Olea Europaea Fruit Oil (Olive Oil), Dimethicone, Cyclopentasiloxane, Butyrospermum Parkii (Shea Butter), Ethylhexyl Palmitate, Glyceryl Stearate, Polysilicone-11, Palmitoyl Glycine, Peg-100 Stearate, Malus Domestica Fruit Cell Culture (Plant Stem Cell) Xanthan Gum/Glycerin/Lecithin/ Phenoxyethanol/Water (Aqua), Tocopheryl Acetate (Vitamin E), Aesculus Hippocastanum (Horse Chestnut) Seed Extract, Ginkgo Biloba Leaf Extract, Centella Asiatica (Gotu Kola) Extract, Camellia Oleifera (Green Tea) Leaf Extract, Curcuma Zeodaria (Turmeric) Leaf Extract, Rosmarinus Officinalis (Rosemary) Leaf Extract, Cucumis Sativus (Cucumber) Fruit Extract, Chamomilla Recutita (Matricaria) Flower Extract, Symphytum Officinale (Comfrey) Leaf Extract, Salix Alba (Willow) Bark Extract, Amyris Balsamifera Bark (West Indian Rosewood) Oil, Aniba Rosaeodora (Rosewood) Wood Oil, Cananga Odorata Flower (Ylang-Ylang) Oil, Cymbopogon Martini (Palmarosa) Oil, Elettaria Cardamomum (Cardamon) Seed Oil, Pelargonium Graveolens (Geranium) Flower Oil, Nylon-12, Silica, PEG-10 Dimethicone, Polysorbate 40,Isohexadecane, Ammonium, Polyacryloyldimethyl Taurate, Polyacrylamide, C13-14 Isoparaffin, Laureth-7, Sorbitan Stearate, Carbomer, Magnesium Aluminum Silicate, Sodium Hydroxide, Disodium EDTA, Phenoxyethanol, Caprylyl Glycol, Sorbic Acid

Eclos Current Product Packaging



Current Eclos Product, Recent Re-Design of SPF Daily Hydra Primer SPF 30.



# EXHIBIT 2

EX 2



# SOFW JOURNAL

5-2008

English Edition
International Journal for Applied Science
• Personal Care • Detergents • Specialties

D. Schmid, C. Schürch, P. Blum, E. Belser, F. Zülli:

Plant Stem Cell Extract for Longevity
of Skin and Hair

COSMETICS
STEM CELLS

D. Schmid, C. Schürch, P. Blum, E. Belser, F. Zülli*

# Plant Stem Cell Extract for Longevity of Skin and Hair

Keywords: stem cells, anti-aging, plant cell culture, senescence, hair follicles

■ Introduction

What are Stem Cells?
Stem cells are unprogrammed cells that can differentiate into cells with specific functions. Stem cells have therefore a big potential in regenerative medicine. Regenerative therapies are used to stimulate healing and might be used in the future to treat Parkinson's, Alzheimer's or diabetes. Regenerative medicine will result in an extended healthy life span. Stem cell research is now a fascinating, hot topic that is already used in cosmetics. Anatokin, a face care product line of Voss Laboratories, is claimed to stimulate the stem cells in the skin. And Dior's Capture R60/80 XP range are anti-wrinkle products whose mechanism of action is based on protection of the life force of stem cells.

So what exactly are stem cells? The main principles that define stem cell populations include: (i) the capacity to replenish themselves through self-renewal and (ii) the ability to generate differentiated cells. There are two types of stem cells in animals and humans: embryonic stem cells and adult stem cells. Embryonic stem cells are pluripotent and thus can differentiate into all cell types of the body. The role of adult stem cells is to maintain and repair tissues. They are more restricted and normally able to differentiate only into the different cell types of the tissue in which they are found. But there exist also adult stem cells with a pluripotent differentiation potential. They are the focus of the newest research because there are no ethical concerns with adult stem cells. Each cell, whether stem cell or differentiated cell, has the same DNA, meaning the same genes. So what makes a stem cell a stem cell? Their characteristics depend on signals from the microenvirone-

## Summary

Stem cells of an old apple cultivar with very good storage properties were produced by applying plant cell culture technique. The extract of the cultured apple stem cells was shown to enhance the viability of umbilical cord blood stem cells, to reverse senescence signs in human fibroblast cells and to increase lifespan of isolated human hair follicles. PhytoCellTech™ Malus Domestica, a cosmetic ingredient based on encapsulated extract of cultured apple stem cells, was tested in a clinical trial over 4 weeks with 20 subjects. This new ingredient was found to significantly reduce wrinkles in the crow's feet area.



Fig. 1 The hair bulge contains multipotent stem cells that contribute to the lineages of the epidermis, the sebaceous gland and the hair follicle

Labels: Epidermal layer; Basal layer; Outer root sheath; Inner root sheath; Hair shaft; Hair follicle matrix; Sebaceous gland; Hair bulge stem cells; Dermal papilla

Exhibit A - Page 43 of 50

# COSMETICS
## STEM CELLS

ment, i.e. from the neighbouring cells that form a kind of niche. But principally there are signals inside the cell that control their fate. These signals are called epigenetic signals. In brief, these are tags on the DNA or the surrounding histone proteins that regulate the switching on or off of genes.

### ■ The Role of Stem Cells in the Skin

The skin is actually the largest organ in the human body. It is covered by the epidermis, a stratified epithelium. The epidermis comprises the interfollicular epidermis, the hair follicles and the sebaceous glands. Because the terminally differentiated cells in the epidermis are shed from the skin, there must be a continuous delivery of newly differentiating cells. This shows the importance of stem cells in the skin. There is strong evidence that the hair bulge forms a reservoir of epidermal stem cells (Fig. 1). From there, stem cells periodically migrate to the matrix of the hair follicle, the sebaceous gland and the basal layer in the interfollicular epidermis (shown with dashed pink lines) to produce progenitors that differentiate into hair cells, gland cells or cells of the upper epidermal layers respectively (shown with dashed green lines) (1).

The basal layer of the epidermis contains two different types of cell populations (Fig. 2): (I) the slowly dividing epidermal stem cells and (II) their progeny that are rapidly dividing cells in order to supply new cells to replace those that get lost by desquamation. After a limited number of divisions, they detach from the basement membrane and start the differentiation program leading finally to stratum corneum cells. Newest studies showed that the stem cells might comprise 2 - 7% of the basal layer cells. The fact that the self-renewal of the epidermal stem cell is slow, is important, because they die after a certain number of divisions and because each division bears the risk of lethal DNA mutations. And loss of stem cells is by far more detrimental for the tissue than when we lose differentiated cells. Hair graying for example could be shown to result from the fact that the melanocyte stem cells in the hair follicle have died off (2).

### ■ Plant Stem Cells and their Propagation in Culture

Plants also have stem cells. Two populations of stem cells, one comprising the shoot apical meristem and the other the root apical meristem, give rise to the plant body. The maintenance of stem cells in plants is also dependent upon signals from the microenvironment and on similar epigenetic control as in mammalian stem cells (3). Unlike humans, adult plants contain totipotent stem cells with the potential to regenerate a whole plant. The plant tissue culture technique is based on propagation of plant stem cells either to produce a whole plant, only tissue or just single cells in culture to harvest plant metabolites. This practice allows the production of plant material under sterile and standardized conditions independent of season and other environmental restraints. Plant tissue cultures can be initiated from nearly all plant tissues. The tissue material which is obtained from the plant to culture is called an explant. As a kind of wound reaction, new cells are formed on the cut surfaces of the explant. The cells slowly divide to form a colorless cell mass which is called callus. These cells have dedifferentiated into cells that lack the distinctive features of normal plant cells. Callus cells are stem cells comparable to those in the meristem regions. For high yield production callus cells can be cultured as individual cells or small cell clusters in a liquid culture.

### ■ Apple Stem Cells of Cultivar with Excellent Storage Properties

A fresh apple is a symbol for beautiful skin. Apples with very good storage properties stay fresh over months. These apples must have especially long-living tissue stem cells. Could we profit from these stem cells? What would be the effect of an extract of such long-living stem cells on the skin? But the commercially available apples are not suited for long storage. They are selected for intensive cultivation and for a pleasant sweet flavor. In former times, good storage properties were an important factor for cultivar selection. Some of these old cultivars survived as isolated trees in areas with less intensive agriculture. The Uttwiler Spätlauber is an apple tree that was cultivated especially because of its good storage properties (Fig. 3). The Spätlauber variety derives from a seedling that was planted in the middle of the 18th century. There are still some Uttwiler Spätlauber trees



Fig. 2 Epidermal stem cell generates transit amplifying cells that differentiate to form the stratified layers

Stratum corneum
Granular layer
Spinous layer
Basal layer
Dermis
Epidermal stem cell
Transient amplifying cells
Basement membrane

Exhibit A - Page 44 of 50

COSMETICS

STEM CELLS



Fig. 3 Isolated Uttwiler Spätlauber tree found in the Zimmerberg region at the lake of Zürich.

left in certain areas in Switzerland. The apples of one of these trees were used to obtain tissue explants in order to initiate a plant cell culture. A success full liquid culture in bioreactors of Uttwiler Spätlauber stem cells could be established. An extract of these cells was tested in a series of studies for anti-aging efficacy in skin and hair.

□ Matrials and Methods

Plant cell cultures
Apples of the Uttwiler Spätlauber variety were used for selection of suitable

plant material. Callus induction and sub-cultivation was carried out according to standard protocols. Incorporation of the dedifferentiated cells in an appropriate liquid media, homogenisation of the cells in suspension and continuous characterisation of the cell suspension was also carried out according to standard procedures. For up-scaling, 10% of the next larger culture volume of a fully grown cell suspension was used as inoculum. Production of biomass was done in 50 to 100 l cultures with a special bioreactor-system (Wave-Biotech AG, Tagelswangen, Switzerland). Cultivation was done at 25°C and an aeration of 0.1 vvm. Biomass production was monitored by analysis of total sugar concentration, conductivity, pH-value and optical density. Production of secondary metabolites was followed by HPLC and UV/VIS analysis.
The extract of Uttwiler Spätlauber stem cells was obtained after lysis of the plant cells using high pressure homogenisation. For preparation of PhytoCellTech™ Malus Domestica, the etract was incorporated into lecithin liposomes. The composition of PhytoCellTech™ Malus Domestica is the following (INCI): Malus Domestica Fruit Cell Culture, Xanthan Gum, Glycerin, Lecithin, Phenoxyethanol and Aqua.

□ Results and Discussion

Protection of Human Stem Cells
Stem cells from umbilical cord blood represent an ethically correct source of human stem cells. An extract of Uttwiler Spätlauber stem cells was tested on cell viability of umbilical cord blood stem cells in two different studies. First, the effect of the extract on the proliferative activity of the human stem cells was analyzed. There was a clear, concentration-dependent effect found (Fig. 4). At only 0.1%, the extract stimulated cell proliferation by 80%. In a second experiment, the stem cells were stressed through irradiation with UV light. Almost 50% of the cells that were cultured in the growth medium alone died, whereas cells cultured in presence of an extract of Uttwiler Spätlauber experienced only a small loss of viability (Fig. 5).

Reversion of Senescence Signs in Fibroblast Cells
Senescence is a natural process that, after about 50 divisions, stops the capacity of the cell to undergo further divisions. But senescence can also happen earlier in a cell's life, for example as response to damage to the cellular DNA. Premature senescence is especially detri-



Fig. 4 Effect of Uttwiler Spätlauber stem cell extract on viability of umbilical cord blood stem cells



Fig. 5 Uttwiler Spätlauber stem cell extract protects umbilical cord blood stem cells against UV light

32

## COSMETICS

### STEM CELLS

mental when it hits stem cells because they are indispensable for tissue regeneration. Recently a cellular model for premature senescence was established based on fibroblast cells. After a two hour treatment with $H_2O_2$, the cells showed the typical signs of senescence. This model was used to prove an anti-senescence effect of an extract of Uttwiler Spätlauber stem cells. After the $H_2O_2$ treatment, the fibroblast cells were incubated with 2% extract for 144 hours. Then gene expression was analyzed with a cDNA array system comprising of 150 probes related to cellular growth, signaling, senescence and aging. Gene expression was compared to that of cells that were kept only in the culture medium after the $H_2O_2$ treatment. In the control culture, several genes important for cellular proliferation and stimulation of cellular growth were down regulated after $H_2O_2$ treatment (Table 1). Incubation with the extract of Uttwiler Spätlauber stem cells neutralized this down regulation or even induced an up regulation. The extract also strongly stimulated the expression of an important antioxidant enzyme, heme oxigenase 1, whose expression was surprisingly not increased in the control.

| Gene | after $H_2O_2$ Control (% to untreated) | after $H_2O_2$ + 2% Extract (% to untreated) |
|---|---|---|
| cyclin B1: induces proliferation | 73 | 130 |
| cyclin E1: controls cell cycle | 78 | 135 |
| P53: tumor uppressor gene | 63 | 137 |
| insulin-like growth factorII: cell prolifertion enhancer | 71 | 117 |
| heme oxigenase 1: antioxidans enzyme | 89 | 211 |

Table 1 Effect of Uttwiler Spätlauber stem cell extract on gene expression profile of fibroblast cells after $H_2O_2$ treatment

Fig. 6 shows that follicles kept in presence of the Uttwiler Spätlauber stem cell extract continued to elongate until day 18, whereas the control follicles started to shrink after day 14.

### Anti-Wrinkle Effect on the Crow's Feet Area

The anti-wrinkle efficacy of PhytoCellTec Malus Domestica was demonstrated in a clinical trial over 4 weeks with 20 subjects. A cream with 2% PhytoCellTec™ Malus Domestica was applied twice daily to the crow's feet area. Wrinkle depth was analyzed with the PRIMOS system after 2 and 4 weeks. Digital photos of the crow's feet area were taken at the beginning and the end of the study. The PhytoCellTecTM Malus Domestica cream was found to significantly reduce wrinkle depth after two and after four weeks, by 8% and 15% respectively. The effect can be nicely demonstrated by generation of 3D pictures. Such an example is shown in Fig. 7. The anti-wrinkle efficacy could also been shown on digital photos (Fig. 8).

### Retardation of Senescence in Isolated Hair Follicles

Human hair follicles can be isolated by microdissection from skin fragments that are left after facelift surgery. Only follicles in the anagen phase are collected. Hair follicles are mini organs that represent a natural coculture model of epidermal and melanocyte stem cells and differentiated cells. The follicles can be maintained in a growth medium where they elongate until about day 14. Then the follicle cells gradually become senescent or undergo apoptosis which is a programmed cell death. Because of the lack of blood circulation, isolated hair follicles cannot be kept alive and growing for a longer period. But isolated hair follicles are test models to screen for actives that can delay the necrosis process. Addition of 0.2% of an extract of Uttwiler Spätlauber stem cells was found to slightly but clearly postpone senescence- and apoptosis-induced necrosis.



Fig. 6 Uttwiler Spätlauber stem cell extract increases lifespan of isolated human hair follicles

34

Exhibit A - Page 46 of 50



Fig. 7 3D picture analysis of the crow's feet area before and after application of a cream with 2% PhytoCellTec™ Malus Domestica




Fig. 8 Digital photos of the crow's feet area before and after treatment with a cream with 2% PhytoCellTec™ Malus Domestica

resistance against senescence and apoptosis of human stem cells. In this way, the plant stem cell extract promotes regeneration of skin and hair and delays the appearance of skin aging signs. The exact mechanism is not known. But the Uttwiler Spätlauber apples, known to stay fresh for an extraordinarily long time, might have stem cells with a special epigenetic profile. It seems that these epigenetic factors have a positive effect on human stem cells.

### References

(1) *Borthel R & Aberdam D. (2005)* Epidermal stem cells. Journal of European Academy of Dermatology and Venereology 19:405-13

(2) *Nishimura E.K., Granter S.R. & Fisher D.E. (2005)* Mechanisms of Hair Graying: Incomplete Melanocyte Stem Cell Maintenance in the Niche. Science 307:720-4

(3) *Byrne M.E., Kidner C.A. & Martienssen R.A. (2002)* Plant stem cells: divergent pathways and common themes in shoots and roots. Current Opinion in Genetics & Development 13: 551-7

* Author's addresses:
Mibelle Biochemistry
Bolimattstrasse 1
5033 Buchs
Switzerland
Email: Daniel.Schmid@MIBELLE.CH

□

□ **Conclusions**

Stem cells are the most important cells in the skin. They are the source for continuous regeneration of the epidermis, the formation of new hair and hair pigments. Reduced viability and premature senescence or apoptosis of stem cells is a principal cause for tissue aging. The results presented in this article show that an extract of Uttwiler Spätlauber stem cells positively influences viability and

Exhibit A - Page 47 of 50

# EXHIBIT 3

EX. 3

## The Law Office of Jack Fitzgerald, PC

The Palm Canyon Building | 2870 Fourth Avenue, Suite 205 | San Diego, California 92103
Phone: (619) 692-3840 | Fax: (619) 362-9555

December 30, 2014

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Ted Paul, Controller & Designated Agent for Service
pH Beauty Labs, Inc.; Controller, Freeman Beauty, LLC
1964 Westwood Blvd., Ste. 300
Los Angeles, CA 90025

Re:   Notice of Violation of California Consumers Legal Remedies Act and Demand to
      Remedy Regarding Eclos "Apple Stem Cell" Skin Care Products; Notice of Duty to
      Preserve Evidence

Dear Mr. Paul & Whomever Else It May Concern:

This firm, together with the Law Offices of Ronald A. Marron, APLC, represents California
consumer Geri Marshall, who purchased an Eclos "Apple Stem Cell" skincare product for her own,
personal household use. On behalf of Ms. Marshall, a class of consumers who purchased Eclos
"Apple Stem Cell" skincare products, and the general public, I write to notify pH Beauty Labs, Inc.,
and Freeman Beauty, LLC, of their violations of the California Consumers Legal Remedies Act, Cal.
Civ. Code §§ 1750 et seq., in connection with their marketing, advertising, labeling, and sale of
Eclos "Apple Stem Cell" skincare products, which are deceptively labeled; and to notify pH Beauty
and Freeman of their duties to preserve relevant evidence.

Notice of Violation of Cal. Civ. Code §§ 1750 et seq.

Pursuant to Cal. Civ. Code § 1782(a), Ms. Marshall hereby notifies you that the marketing,
advertising, and labeling of Eclos "Apple Stem Cell" skincare products violates at least the
following provisions of section 1770 of the California's Consumers Legal Remedies Act:

- Representing that goods or services have sponsorship, approval, characteristics,
  ingredients, uses, benefits, or quantities which they do not have . . . . (id. §
  1770(a)(5));

- Representing that goods or services are of a particular standard, quality, or
  grade, or that goods are of a particular style or model, if they are of another (id. §
  1770(a)(7));

- Advertising goods or services with intent not to sell them as advertised (id. §
  1770(a)(9)); and

- Representing that the subject of a transaction has been supplied in accordance
  with a previous representation when it has not (id. § 1770(a)(16)).

Jack Fitzgerald | jack@jackfitzgeraldlaw.com

Exhibit A - Page 49 of 50

2 | P a g e

Ms. Marshall, on behalf of herself, other purchasers of Eclos "Apple Stem Cell" skincare products, and the general public, hereby demands that pH Beauty and Freeman correct, repair, replace, or otherwise rectify the marketing, advertising, and labeling of Eclos "Apple Stem Cell "skincare products that is in violation of § 1770. Specifically, Ms. Marshall demands that pH Beauty and Freeman: (1) provide class members who purchased Eclos "Apple Stem Cell" skincare products refunds if they make a claim; (2) discontinue selling Eclos "Apple Stem Cell" skincare products if they are deceptively marketed, advertised, or labeled; and (3) engage in a corrective advertising campaign to alert previous purchasers that Eclos "Apple Stem Cell" skincare product claims were false or misleading. If pH Beauty and Freeman do not, within 30 days after receiving this letter, initiate these corrective actions, Ms. Marshall may, on behalf of herself and others, bring claims against pH Beauty and Freeman under the California Consumers Legal Remedies Act for actual and punitive damages.

<u>Notice of Duty to Preserve Evidence</u>

"The duty to preserve evidence is triggered when litigation is pending or reasonably foreseeable, at which time a party is required to preserve all relevant evidence and put into place a litigation hold to preserve relevant documents." *Net-Com Servs. v. Eupen Cable USA, Inc.*, 2013 U.S. Dist. LEXIS 109810, at *6-7 (C.D. Cal. Aug. 5, 2013) (citations omitted). Ms. Marshall accordingly notifies pH Beauty and Freeman of their duty to preserve evidence relevant to the potential litigation that she may initiate if pH Beauty and Freeman do not undertake the steps demanded herein. pH Beauty and Freeman should preserve all relevant hard copy documents and information, including without limitation, communications and other documents concerning Eclos "Apple Stem Cell" skincare products manufacture, marketing, advertising, labeling, packaging, distribution, inventory, and sales, as well as samples of Eclos "Apple Stem Cell" skincare products currently in pH Beauty's or Freeman's possession, custody, or control.

Ms. Marshall will permit pH Beauty and Freeman a reasonable time to review this letter and demonstrate that an early resolution may be possible. Absent some reasonable indication that pH Beauty and Freeman intend to remedy the wrongs described herein without delay, however, Ms. Marshall intends to file a class action in the United States District Court.

Very truly yours,

Jack Fitzgerald

cc:   Ronald A. Marron

Jack Fitzgerald | jack@jackfitzgeraldlaw.com